UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                 )
AMMAR AL-BALUCHI                 )
a/k/a Ali Abdul Aziz Ali,        )
                                 )
        Petitioner,              )
                                 )
    v.                           )        Civil Action. No. 08-2083 (PLF)
                                 )
MARK T. ESPER,                   )
Secretary of Defense, et al.,    )
                                 )
        Respondents.             )
_____)
```

OPINION

      Pending before the Court are the motion of petitioner Ammar al-Baluchi and a cross motion from respondents Mark T. Esper (as Secretary of Defense); the Commander of Joint Task Force Guantanamo; and the Commander of Prison Camp Guantanamo ("respondents").[1] Mr. al-Baluchi is a detainee at Guantanamo Bay Naval Base whom the United States is prosecuting before a military commission for his alleged role in the terrorist attacks of September 11, 2001. He has filed a classified motion for permanent injunction or mandamus to enjoin the capital military commission proceedings [Dkt. No. 200]. Respondents have filed an unclassified cross motion to hold in abeyance the habeas corpus petition, filed in this court over a decade ago, pending completion of the military commission proceedings [Dkt. No. 204]. Upon careful consideration of the briefs, the relevant authorities, the arguments presented at the

_____

     [1] Mr. al-Baluchi filed suit against the Secretary of Defense in his official capacity. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the current holder of that office, Mark T. Esper, is substituted for his predecessor as party to this litigation.

motions hearing held on February 27, 2019, and the record in this case, the Court will grant

respondents' cross-motion and deny Mr. al-Baluchi's motion.[2]  The habeas corpus proceedings

in this Court will be stayed pending completion of the military commissions trial and appeal.

Also pending before the Court are six procedural motions, which need not be

resolved now since the Court is staying the habeas corpus proceedings until completion of the

military commission proceedings.  The following motions, therefore, will be stayed pending

further order of this Court: respondents' sealed Motion to Deem Protected Information

Highlighted in the Accompanying Proposed Public Factual Return for ISN 10018 [Dkt. No.

125]; Mr. al-Baluchi's Classified Motion for Discovery [Dkt. No. 152]; Mr. al-Baluchi's

Classified Motion Regarding Entry of Redacted Opinions and Orders on Docket [Dkt. No. 155];

Mr. al-Baluchi's Classified Motion to Modify Protective Order [Dkt. No. 156]; Mr. al-Baluchi's

---

[2]        The following documents and accompanying exhibits are especially relevant to consideration of the motions: Mr. al-Baluchi's December 2, 2008 Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Habeas Pet.") [Dkt. No. 1]; Respondents' Status Report of December 22, 2008, ("Dec. 22, 2008 Status Rep.") [Dkt. No. 7]; Exhibit Narrative to Respondents' Public Filing of Factual Return, ("Factual Return") [Dkt. No. 96-1]; January 31, 2018 Joint Status Report, ("Jan. 31, 2008 Joint Status Rep.") [Dkt. No. 197]; Mr. al-Baluchi's Classified Updated Motion for Permanent Injunction or Mandamus with respect to Unlawful Trial by Capital Military Commission ("Al-Baluchi Mot.") [Dkt. No. 200]; Respondents' Unclassified Updated Memorandum in Opposition to Petitioner's Motion for Permanent Injunction or Mandamus with Respect to His Unlawful Capital Military Commission and Cross Motion to Hold Petition in Abeyance Pending Completion of Military Commission Proceedings, ("Respondents' Cross Mot.") [Dkt. No. 203 (memo in opposition) and Dkt. No. 204 (cross motion)]; Exhibit A to Respondents' Cross Mot., ("2012 Charge Sheet") [Dkt. No. 203-1]; Mr. al-Baluchi's Classified Reply in Support of Updated Motion for Permanent Injunction or Mandamus with Respect to Unlawful Trial by Capital Military Commission and Response to Motion to Hold Case in Abeyance ("Al-Baluchi Reply") [Dkt. No. 207]; Respondents' Reply in Support of Cross-Motion to Hold in Abeyance ("Respondents' Reply") [Dkt. No. 208]; February 27, 2019 Motions Hearing Transcript, ("Mot. Hr'g. Tr.") [Dkt. No. 216]; and Mr. al-Baluchi's Notice of Supplemental Authority [Dkt. No. 217].

Classified Motion to Preserve Evidence [Dkt. No. 157]; and Mr. al-Baluchi's Classified *ex parte* motion [Dkt. No. 160].

## I.     BACKGROUND

### A.  Allegations and Detention

Ammar al-Baluchi is a Pakistani national detained at the United States Naval Base in Guantanamo Bay, Cuba ("Guantanamo").[3]  The United States is prosecuting Mr. al-Baluchi before a military commission for his alleged role in financing the terrorist attacks of September 11, 2001.

In the late 1990s, Mr. al-Baluchi worked as a computer technician and systems manager in Dubai.  The government alleges that, in January of 2000, Mr. al-Baluchi purchased flight training videos and simulation software in order to provide information about commercial airline operations to Marwan Al-Shehhi, who flew American Airlines Flight 175 into the South Tower of the World Trade Center on September 11.  Factual Return at 11-17.  In April 2000, the government asserts, Mr. al-Baluchi began sending bank-to-bank transfers of funds from Dubai to the 9/11 hijackers in the United States.  In all, the government alleges that Mr. al-Baluchi made six transfers totaling more than $100,000 to the 9/11 hijackers and pilots in the months during which they were planning the attacks.  See id. at 18-24.  Mr. al-Baluchi fled Dubai for Pakistan the day before the 9/11 attacks.  Id. at 25.  The government alleges that he continued to manage

---

[3]       "Ammar al-Baluchi" is petitioner's kunya.  The government asserts that a kunya is an Arabic honorific that usually connotes parenthood but that is also sometimes used as an alias by extremists.  Factual Return at 7-8.  The name listed on petitioner's immigration and financial documents is Ali Abdul Aziz Ali.  Id.

Al-Qaeda funds for investment and safekeeping, executing in-person exchanges of currency in excess of $500,000. See id. at 25-29.

The United States apprehended Mr. al-Baluchi during or after March 2003. See Factual Return at 29. Mr. al-Baluchi says that the United States subjected him to a "serious pattern of very egregious torture" while detaining him overseas for interrogation. Mot. Hr'g Tr. at 12. See also Classified Statement of Facts (setting out Mr. al-Baluchi's full account of his treatment). The government does not contest this characterization for purposes of the instant motions. See Mot. Hr'g Tr. at 39. Mr. al-Baluchi argues that this mistreatment imperils the legal status of his military commission. Assessing that argument does not require the Court to elaborate on any classified aspects of Mr. al-Baluchi's filings. Rather, in resolving the pending motions, the Court may assume without deciding that the United States tortured Mr. al-Baluchi before he was charged and prosecuted before the present military commission. See id. at 11.

## B. The Military Commission

In approximately September 2006, Mr. al-Baluchi was taken to the United States Naval Base in Guantanamo Bay, where he remains to this day. See Habeas Petition at 4. The government asserts that Mr. al-Baluchi is subject to detention pursuant to the 2001 Authorization for the Use of Military Force, which authorizes the President to use military force against those who "planned, authorized, committed, or aided the terrorist attacks that occurred on September 11, 2001." Pub. L. 107-40. The United States is prosecuting Mr. al-Baluchi as an enemy combatant before a capital military commission at Guantanamo Bay that has been empaneled pursuant to the Military Commissions Act of 2009, Pub. L. 111-84. A Combatant Status Review Tribunal ("CSRT") convened by the Department of Defense has designated Mr. al-Baluchi an enemy combatant, a determination that Mr. al-Baluchi unsuccessfully challenged with a petition

4

to the United States Court of Appeals for the D.C. Circuit.  See Resp. Dec. 22, 2008 Status Rep. at 1.[4]

Mr. al-Baluchi was originally charged before a military commission on May 9, 2008.  See Dec. 22, 2008 Status Rep. at 1.  In 2009, however, the government decided to bring Mr. al-Baluchi and four other 9/11 co-conspirators to trial in federal court in New York.   When that trial did not proceed, the Office of Military Commissions swore new "charges and specifications" against Mr. al-Baluchi on May 31, 2011 and January 25, 2012.  The charging document accused Mr. al-Baluchi of nine crimes triable by military commission pursuant to 10 U.S.C. § 950t.  See 2012 Charge Sheet at 13-15, 17-36, 117-19.[5]  On April 4, 2012, Convening Authority Bruce MacDonald ordered that Mr. al-Baluchi be tried on these charges by capital military commission.  In the intervening years, the government and Mr. al-Baluchi have been engaged in extensive pre-trial litigation before the capital military commission.[6]

---

[4]     The court of appeals denied Mr. al-Baluchi's petition in 2009, concluding that it lacked subject matter jurisdiction to entertain a challenge to the enemy combatant designation. See Al-Baluchi v. Gates, 2009 U.S. App. LEXIS 9626, *1 (D.C. Cir. 2009) (citing Bismullah v. Gates, 551 F.3d 1068 (D.C. Cir. 2009)).  The court of appeals in Bismullah found that direct review of the CSRTs could not be severed from a jurisdiction-stripping provision held unconstitutional by Boumediene v. Bush, 553 U.S. 723 (2008).  The court reasoned that Congress would not have conferred jurisdiction to review CSRTs if it knew that Boumediene would restore broader habeas jurisdiction.

[5]     Mr. al-Baluchi was charged with conspiracy under 10 USC § 950t(29), attacking civilians under 10 USC § 950t(2), attacking civilian objects under 10 USC § 950t(3), intentionally causing serious bodily injury under 10 USC § 950t(13), murder in violation of the law of war under 10 USC § 950t(15), destruction of property in violation of the law of war under 10 USC § 950t(16), hijacking or hazarding a vessel or aircraft under 10 USC § 950t(23), terrorism under 10 USC § 950t(24),  and providing material support for terrorism under 10 USC § 950t(25).  As of the date of the charges, the crimes triable by military commission were codified at 10 U.S.C. § 950v.  See Resp. Dec. 22, 2008 Status Rep. at 2.

[6]     The commission's docket exceeds seven thousand entries, including more than five hundred motions filed by Mr. al-Baluchi or his co-defendants.  See Office of Military Commissions, 9/11: Khalid Shaikh Mohammad et al., available at

*C. The Habeas Corpus Proceedings and the Instant Motions*

On December 2, 2008, Mr. al-Baluchi filed with this Court his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Habeas Pet. at 1. The petition alleges that Mr. al-Baluchi was held by the CIA before arriving at Guantanamo Bay, that he is innocent of the charged offenses, and that his ongoing detention violates the United States Constitution and other U.S. laws. Id. at 1-2. The petition seeks a determination from this Court that his detention is unlawful. Id. The parties have spent years litigating procedural matters associated with the habeas petition, including discovery, access to classified information, and preservation of evidence.

The motions now before the Court require a decision on whether one of Mr. al-Baluchi's two ongoing proceedings should take precedence over the other – and, if so, whether it is the military commission or the habeas corpus proceeding in this Court that must yield. The instant motions supersede earlier filings from 2012 and 2014.[7] Mr. al-Baluchi submitted his revised classified motion [Dkt. No. 200], which seeks to enjoin his military commission from proceeding, in March of 2018. Mr. al-Baluchi argues that his capital military commission is *ultra vires* because executing him would be cruel and unusual punishment and would subject him

---

https://www.mc.mil/CASES.aspx. The parties have processed more than 400,000 pages of discovery and have convened more than one hundred days of hearings. Cross. Mot. at 9.

[7]     Respondents filed their first motion to hold the habeas proceedings in abeyance [Dkt. No. 130] in September 2012. After receiving four extensions of the response deadline, Mr. al-Baluchi filed his first classified motion to enjoin the military commission proceedings [Dkt. No. 154] in August 2014. The Court directed the parties to revise their motions to account for the decision of the U.S. Court of Appeals in In re Al-Nashiri, 835 F.3d 111 (D.C. Cir. 2016), cert. denied sub nom Al-Nashiri v. Trump, 138 S. Ct. 354 (2017) (affirming district court's stay of habeas proceedings on grounds of jurisdictional abstention). See March 5, 2018 Scheduling Order. The revised motions are now before the Court.

to double jeopardy, in light of the torture he claims that he has already endured. He believes that

this Court has jurisdiction to resolve the substance of his habeas corpus petition, and that it is not

equitably barred from exercising it. Respondents submitted their revised motion [Dkt. No. 204],

styled as a cross motion, to hold the habeas proceedings in abeyance pending completion of the

military commission, in April of 2018. Respondents argue that this Court lacks subject matter

jurisdiction to consider Mr. al-Baluchi's motion to enjoin the military commission, and that, in

any event, the Court should abstain on equitable grounds from exercising jurisdiction over the

injunction motion and the underlying habeas corpus petition. Briefing on the motions continued

in the spring and summer of 2018 and the Court heard oral arguments on February 27, 2019.

## II.    LEGAL STANDARDS

### A. Jurisdictional Abstention

#### 1. Principles of Councilman Abstention

While courts have a strict duty to exercise the jurisdiction conferred upon them by

Congress, there are exceptions – for example where abstention is warranted. See Quackenbush

v. Allstate Insurance Co., 517 U.S. 706, 716 (1996). Where a petitioner seeks equitable relief,

"[t]here remains the question of equitable jurisdiction, a question concerned, not with whether

the claim falls within the limited jurisdiction conferred on the federal courts, but with whether

consistently with the principles governing equitable relief the court may exercise its remedial

powers." Schlesinger v. Councilman, 420 U.S. 738, 753-54 (1975). In this spirit, the Supreme

Court has "preclude[d] equitable intervention into pending state criminal proceedings" under

most circumstances. Id. at 756 (citing Younger v. Harris, 401 U.S. 37, 46 (1927) (internal

quotations omitted)).

In Schlesinger v. Councilman, the Supreme Court extended abstention from state criminal proceedings to military courts martial. It held that "the balance of factors governing exercise of equitable jurisdiction by federal courts normally weighs against intervention, by injunction or otherwise, in pending court-martial proceedings." See Schlesinger v. Councilman, 420 U.S. at 740; see also id. at 757-60. Two factors inform this balance: the importance of the coordinate system's interest in avoiding premature review from federal courts, id. at 758, and the adequacy of the coordinate system's procedures for protecting "[defendants'] legitimate interests," id. at 760.

In In re Al-Nashiri, 835 F.3d 110 (D.C. Cir. 2016) ("In re Al-Nashiri"), the D.C. Circuit confirmed that Councilman abstention also applies to military commissions. The court distinguished Mr. Al-Nashiri's petition from the petition in Hamdan v. Rumsfeld, 548 U.S. 557, 587 (2006), in which the Supreme Court declined to extend Councilman abstention to a Guantanamo detainee. In re Al-Nashiri, 835 F.3d at 120. Salim Hamdan, however, faced a commission that lacked the safeguards later conferred by the Military Commissions Act of 2006, Pub. L. 109-366, as amended ("MCA"). Noting that "much has changed since Hamdan," the court of appeals extolled the MCA's substantially enhanced procedural protections, including the right to appeal. Id. at 120. The court identified "two comity considerations" that drive the abstention analysis: "to abstain we must be assured of both the *adequacy* of the alternative system in protecting the rights of defendants and the *importance* of the interests served by allowing that system to proceed uninterrupted by federal courts." Id. at 121 (emphasis in original).

With respect to the adequacy of the protections provided by the military commissions at Guantanamo Bay, the court in In re Al-Nashiri was "convinced that the MCA's

review structure is adequate because it is virtually identical to the review system for courts martial approved by the [Supreme Court] in Councilman." In re Al-Nashiri, 835 F.3d at 122. Detailing the protections afforded by the MCA, id. at 122, the court of appeals held that a court need not "determine whether pretrial intervention is warranted by examining the on-the-ground performance of the system that Congress and the Executive have established." Id. at 123. Rather, the MCA scheme itself is presumptively adequate, absent claims that the MCA is unlawful or that petitioner would be unable to fully defend himself before one of its military commissions. See id.

As for the importance of the interest in allowing the coordinate system to proceed without interference, the court in In re Al-Nashiri held that "Congress and the President implicitly instructed that judicial review should not take place before that system has completed its work." In re Al-Nashiri, 835 F.3d at 124. This instruction advances "the need for federal courts to avoid exercising their equitable powers in a manner that would unduly impinge on the prerogatives of the political branches in the sensitive realm of national security," where "the expertise of the political branches is at its apogee." Id. at 124-25 (citing Hamdi v. Rumsfeld, 542 U.S. 507, 531 (2004)). Congress crafted a separate statutory scheme for trying certain belligerents and allowed for post-conviction review by Article III courts. "[B]y providing for Article III involvement at a particular point, Congress implicitly signals that Article III courts should get involved no sooner." In re Al-Nashiri, 835 F.3d. at 125. "Moreover, the eventual involvement of an Article III appellate court lessens the need for immediate intervention because an Article III court can remedy any error on appeal." Id. at 127.

In sum, the adequacy of procedural protections and the importance of avoiding premature review produce a rule of general application concerning abstention from review of

military commissions. Because the court of appeals made categorical findings about the importance and adequacy considerations with respect to *all* military commissions under the MCA, courts in this circuit are to abstain from resolving pre-conviction habeas petitions arising from MCA commissions *unless* the particular facts of a petitioner's case suggest that abstention is unwarranted. See In re Al-Nashiri, 835 F.3d at 122-28.[8]

### 2. Exceptions to Councilman Abstention

After determining that Councilman abstention is appropriate for a particular kind of coordinate proceeding, courts must "examine whether [the] decision to abstain [is] appropriate, in light of any features unique to [petitioner's] case." See In re Al-Nashiri, 835 F.3d at 128. Courts have recognized several exceptions to Councilman, but they are "narrow and limited." Id. at 128. Federal courts may intervene in ongoing criminal proceedings if a plaintiff shows "extraordinary circumstances," which are those that present a threat of "great and immediate injury" and would render the coordinate tribunal "incapable of fairly and fully

---

[8]      This conclusion is unaffected by the court of appeals' recent decision on a further mandamus petition in Mr. Al-Nashiri's case, In re Al-Nashiri, 2019 WL 1601994 (D.C. Cir. April 16, 2019). In that petition, Mr. Al-Nashiri alleged that Vance Spath, the military judge overseeing Mr. Al-Nashiri's commission, had shown impermissible partiality by applying for (and negotiating for) a job at the Department of Justice while simultaneously presiding over Mr. Al-Nashiri's case. Id. at *1-3, *6. The court of appeals concluded that Judge Spath should have disqualified himself and that his specific commission was unfair. It therefore granted Mr. Al-Nashiri's petition for a writ of mandamus, vacating every ruling that Judge Spath made after November 19, 2015 and vacating any orders from the Court of Military Commissions Review concerning Judge Spath's vacated orders. Id. at *13. The earlier holding requiring abstention remains intact, however, because the petition then before the court did not rely on arguments about Mr. Al-Nashiri's specific commission's unfairness. See In re Al-Nashiri, 835 F.3d at 116, 128-29. And the court of appeals' conclusion that abstention was generally appropriate for MCA commissions did not rely on any of Judge Spath's since-vacated rulings. Nor does the recent decision vacating Judge Spath's rulings make any mention of abstention. See generally In re Al-Nashiri, 2019 WL 1601994.

adjudicating the federal issues before it." Id. at 128 (quoting Kugler v. Helfant, 421 U.S. 117, 123-24 (1975)).  Significantly, the "cost, anxiety, and inconvenience of having to defend against a single criminal prosecution" do not alone constitute "extraordinary circumstances." Id.  To qualify, petitioner must allege "great, immediate, and irreparable" injuries that go directly to the capacity or competence of the commission itself. See id. at 128-29.  If the petitioner claims only that burden which is "attendant to resolution of his case in the military court system," then the obligation to abstain persists. Id. at 128; see id. at 128-29.

In In re Al-Nashiri, the D.C. Circuit described an exception to Councilman abstention for a particular kind of extraordinary circumstance: claims arising from "express statutory or constitutional language that gives [petitioner] a right not to be tried" at all. In re Al-Nashiri, 835 F.3d at 131.  Such rights permit pre-conviction intervention by a habeas court because "the trial itself creates an injury that cannot be remedied on appeal." Id. See also Khadr v. United States, 529 F.3d 1112, 1117-18 (D.C. Cir. 2008) (holding that denial of a preliminary jurisdictional ruling by a military commission is not immediately appealable).  Courts have recognized only four types of proceedings that rise to this level: (i) trials that would violate the double jeopardy prohibition, Abney v. United States, 431 U.S. 651, 659 (1977); (ii) trials for conduct protected by the speech or debate clause, Heltoski v. Meanor, 442 U.S. 500, 506-07 (1979); (iii) trials without a grand jury indictment in violation of the Fifth Amendment, Midland Asphalt Corp. v. United States, 489 U.S. 794, 802 (1989); and (iv) the "status exception," where circumstances raise "substantial arguments" as to whether certain individuals may be tried by the military at all. In re Al-Nashiri, 835 F.3d at 133.  "[T]hat is, where there is a substantial question

whether a military tribunal has personal jurisdiction." Id. See also Schlesinger v. Councilman, 420 U.S. at 758-59.[9]

## III.    ANALYSIS

The question of whether the Court should abstain from exercising its jurisdiction is the foremost issue implicated by the instant motions; it is a threshold question whose resolution decides most of the disputes that are now before the Court.[10]  The Court agrees with respondents that it should abstain from exercising its jurisdiction to resolve the merits of Mr. al-Baluchi's habeas corpus petition.

### A.  Jurisdictional Abstention is Warranted

#### 1.  Councilman Abstention Applies to Military Commissions

The court of appeals in In re Al-Nashiri assessed the applicability of Councilman abstention to a military commission that, like this Mr. al-Baluchi's commission, was constituted under authority of the MCA.  The court in In re Al-Nashiri confirmed that military commissions conducted pursuant to the MCA are categorically adequate to protect a defendant's rights, and that important national security interests justify delaying any equitable intervention by Article III courts until after conviction.  In re Al-Nashiri, 835 F.3d at 122, 124.  Mr. al-Baluchi is being tried pursuant to such a commission, and he seeks just such equitable relief.  There is little

---

[9]     Many of these rights to avoid a trial have been recognized in the analogous context of deciding whether to grant interlocutory appeal of matters that would be effectively unreviewable on appeal from final judgement.  See In re Al-Nashiri, 835 F.3d at 131 (citing Midland Asphalt Corp. v. United States, 489 U.S. at 801).

[10]    Respondents frame most of their arguments in terms of abstention.  And Mr. al-Baluchi's arguments for an injunction or mandamus are also his arguments against abstention.

question, therefore, that the Court should abstain unless some exception to <u>Councilman</u>

abstention applies. Mr. al-Baluchi does not ask this Court to hold that abstention should not

apply to MCA military commissions at all, but does seek to preserve the argument for appeal.

He concedes, as he must, that the court of appeals' decision in <u>In re Al-Nashiri</u> requires this

Court to reject the broader argument about the applicability of abstention doctrine to military

commissions. <u>See</u> Mot. Hr'g Tr. at 15, 43.

2.  No Exceptions to <u>Councilman</u> Abstention Apply to Mr. al-Baluchi

The Court now considers whether there are "any features unique to [petitioner's]

case" that make it inappropriate to abstain. <u>In re Al-Nashiri</u>, 835 F.3d at 128. Once an Article

III court determines that a coordinate system protects a defendant's rights and that an important

interest justifies non-interference, abstention exceptions are "limited and narrow." <u>Id</u>. at 129.

Mr. al-Baluchi makes several arguments as to why this Court should not abstain. And, for the

most part, these are the same arguments he makes in favor of his request for an injunction or

mandamus. Mr. al-Baluchi argues that he is entitled to an extraordinary circumstances exception

because imposing a capital punishment would violate prohibitions against cruel and unusual

punishment and double jeopardy. He also claims a jurisdictional exception to <u>Councilman</u>

abstention that may be available where the legal challenge turns on the status of the person

subject to the proceeding. Mr. al-Baluchi makes two attempts to claim this exception: (1) he

argues that his status as a person whom the government has allegedly tortured means that the

government lacks authority to subject him to the military commission, and (2) he argues that a

military commission convened with the authority to impose cruel or unusual punishment or

double punishment is *ultra vires* (and thus lacks personal jurisdiction).

a. <u>Cruel and Unusual Punishment</u>

Mr. al-Baluchi makes two related arguments about the ways in which his military commission violates the prohibition against cruel and unusual punishment.  First, he argues that executing him would violate Fifth and Eighth Amendment (and statutory) prohibitions on cruel and unusual punishment because he has already been tortured.  But the history of the Eighth Amendment shows that it was intended to protect "convicted criminals" from the infliction of certain sentences,  <u>Ingraham v. White</u>, 430 U.S. 651, 664 (1977),  and that it "comes into play only after a formal adjudication of guilt."  <u>See</u> <u>Iraq and Afghanistan Detainees Litigation</u>, 479 F. Supp. 2d 85, 103 (D.D.C. 2007) (citing <u>Whitley v. Albers</u>, 475 U.S. 312, 318 (1986)).  Likewise, the Military Commissions Act of 2009 (on which Mr. al-Baluchi also relies) refers to punishments that are "adjudged" or "inflicted" by the commission.  <u>See</u> 10 U.S.C. §949s.   Mr. al-Baluchi has not yet been convicted or sentenced by the military commission whose power he seeks to enjoin.

Mr. al-Baluchi has offered no authority – under either the Eighth or Fifth Amendments – which establishes that pre-indictment mistreatment renders unconstitutional a hypothetical punishment that could be imposed by a tribunal that was not involved in the alleged torture.  The alleged torture does not constitute an element of a later sentence imposed by a separate entity.  Indeed, at the motions hearing, Mr. al-Baluchi's counsel conceded that if the Court cannot include the prior treatment in its analysis of constitutionality of the commission and its punishment, "our claim doesn't have a lot of legs to stand on."  Mot. Hr'g Tr. at 11.

Mr. al-Baluchi's second "cruel and unusual" argument relates not to the imposition of capital punishment but to what he must endure in the interim.  He argues that undergoing pre-trial proceedings, trial, and a lengthy non-waivable appeals period – all under the

"shadow of death," Mot. Hr'g Tr. at 28 – imposes psychological distress that amounts to cruel and unusual punishment in light of his past mistreatment. Mr. al-Baluchi posits that these are "extraordinary circumstances" that counsel against abstention. One sense in which the argument is "extraordinary," to be sure, is that it falls beyond what courts ordinarily accept as cruel and unusual punishment claims. See Mot. Hr'g Tr. at 11-12. Mr. al-Baluchi advances a radical proposition: that undergoing a statutorily authorized trial should itself be considered a punishment, and a cruel and unusual one at that.

This simply is not the law. Mr. al-Baluchi notes with approval the reasoning contained in a memorandum from Justice Stevens concerning denial of certiorari in Lackey v. Texas, 514 U.S. 1045 (1995). There, Justice Stevens considered the possibility that it might be cruel and unusual punishment to execute a man after he had already spent seventeen years on death row. See id. at 1045. But neither denial of certiorari nor an individual Justice's statements in connection with such denial constitutes authority to which a court must give consideration. See United States v. Jones, 744 F.3d 1362, 1369 (D.C. Cir. 2014) ("[W]hatever the merits of Justice Scalia's argument [dissenting from denial of certiorari], it is not the law."). See also Boumediene v. Bush, 549 U.S. 1328, 1329 (2007) (Stevens and Kennedy, JJ., respecting denial of certiorari) ("[A]s always, denial of certiorari does not constitute an expression of any opinion on the merits.").

Furthermore, the theory of cruel and unusual punishment that Justice Stevens articulated in Lackey – and that Mr. al-Baluchi now advances – has not been adopted by other courts, as Mr. al-Baluchi concedes. See Mot. Hr'g Tr. at 11-12. Only one case cited by Mr. al-Baluchi – a case from the European Court of Human Rights – appears to recognize a not-yet-convicted petitioner's claim for pre-trial relief based on the possible imposition of the death

penalty.  See Soering v. United Kingdom, 161 Eur. Ct. H.R. (ser. A) (1989); see also Resp. Cross

Mot. at 36 (listing cases).  Soering is not binding on this Court.  Nor do arguments relying on

Mr. al-Baluchi's particular distress overcome the admonition from the court of appeals,

regarding possible exceptions from Councilman abstention, that "the cost, anxiety, and

inconvenience of having to defend against a single criminal prosecution cannot by themselves be

considered irreparable in the special legal sense of the term."  In re Al-Nashiri, 835 F.3d at 128

(quoting Schlesinger v. Councilman, 420 U.S. at 755).

> The Court does not doubt that Mr. al-Baluchi is experiencing substantial stress in
apprehension of his trial before the military commission and his possible sentence, but so do all
capital defendants.  Yet, even harms that are greater "in both kind and magnitude . . . from the
harms experienced by the average criminal defendant" need not compel equitable intervention.
See In re Al-Nashiri, 835 F.3d at 129.[11]  Abstention remains appropriate "when the petitioner is
threatened with no injury other than that incidental to every criminal proceeding brought
lawfully and in good faith."  Schlesinger v. Councilman, 420 U.S. at 754-55.  Because
petitioner's arguments here rely on his past mistreatment, they concern "his particular
vulnerabilities to a trial by a military commission at Guantanamo Bay."  See In re Al-Nashiri,
835 F.3d at 129.  Such vulnerabilities do not undermine "the competence of the military
commission itself" and "do not meet the requirements of the extraordinary circumstances"
exception to abstention.  Id.  Mr. al-Baluchi asserts that his history exacerbates the stress of the
proceedings and the burden of a sentence.  While the military commission may wish to consider

---

[11]       In re Al-Nashiri also entailed a petitioner unsuccessfully seeking an abstention
exception for harms that included harsh mistreatment.  See Mot. Hr'g Tr. at 16; In re Al-Nashiri,
835 F.3d at 129.

these equitable arguments at the time of any sentence it imposes, these factors do not

preemptively bar a trial and sentence.

Finally, even if this Court did agree with Mr. al-Baluchi that either the imposition

of capital punishment or its anticipation is cruel and unusual under his circumstances, those

arguments do not merit an exception to abstention. The extraordinary circumstances exception is

available if petitioner establishes that his arguments could not be "fairly and fully

adjudicate[ed]" by the commission itself. See In Re Al-Nashiri, 835 F.3d at 128. But Mr. al-

Baluchi's counsel conceded that "as far as I know, [these arguments] could be raised in the

military commission." Mot. Hr'g Tr. at 26.[12] And respondents agree that the commission may

hear "all of the claims that he has raised [before this Court]" at the commission. Id. at 33.[13] Nor

would the imposition of a sentence of death – even if it would be cruel and unusual punishment

if applied to Mr. al-Baluchi – "create[] an injury that cannot be remedied on appeal." In Re Al-

Nashiri, 835 F.3d at 131.

---

[12]     Mr. al-Baluchi's argument that he is entitled to avoid any proceedings before the
commission because it is *ultra vires* are unavailing. See Part III.A.2.c, infra at 21-23.

[13]     In addition, respondents have argued that the constitutional right to avoid cruel
and unusual punishment does not have extraterritorial applicability to detainees at Guantanamo
Bay. See Resp. Cross Mot. at 26. As Mr. al-Baluchi has noted, however, our court of appeals
recently has confirmed that precedent "leaves open and unresolved the question of what
constitutional procedural protections apply to the adjudication of detainee habeas corpus
petitions." Pet. Notice of Suppl. Authority, Dkt. No. 217, at 2 (citing Qassim v. Trump, et al.,
No. 18-5148, 2019 WL 2553829, at *6 (D.C. Cir. June 21, 2019)); see also Boumediene v. Bush,
553 U.S. at 771, 779, 781 (holding that the Suspension Clause "has full effect at Guantanamo
Bay" and that detainees there "are entitled to the privilege of habeas corpus to challenge the
legality of their detention"). Nevertheless, the Court need not determine the extent of Mr. al-
Baluchi's constitutional rights to resolve the pending motions. Even if Mr. al-Baluchi may claim
the constitutional right to avoid cruel and unusual punishment, the present circumstances do not
merit an exception to Councilman abstention, for the reasons described supra.

b. <u>Double Jeopardy</u>

Mr. al-Baluchi also claims the right to avoid a trial that violates the constitutional prohibition against double jeopardy, which is one of the few recognized exceptions to abstention. <u>See</u> <u>Abney v. United States</u>, 431 U.S. at 659. But the exception is narrow, and its application is warranted only if the double jeopardy allegations are colorable. <u>See</u> <u>Murphy v. Commonwealth of Virginia</u>, 896 F. Supp. 577, 581-83 (E.D. Va. 1995). Mr. al-Baluchi's allegations are not. He argues that imposing a capital sentence (or making him endure a long trial and appeals period) would levy a double punishment, since he has already been tortured. But Mr. al-Baluchi cannot suffer double jeopardy without initial jeopardy. "In the constitutional sense, jeopardy describes the risk that is traditionally associated with a criminal prosecution . . . . the risk to which the Clause refers is not present in proceedings that are not essentially criminal." <u>Breed v. Jones</u>, 421 U.S. 519, 528 (1975). Mr. al-Baluchi's pre-Guantanamo detention was not an "essentially criminal" proceeding. He does not claim that jeopardy ever attached with respect to any of the nine offenses for which he is now being prosecuted (or any other offense), so the alleged torture was not a punishment in the sense relevant to the double jeopardy prohibition.

An additional consideration defeats the double jeopardy argument. The constitutional prohibition against double jeopardy prohibits both a second *prosecution* for the same offense and a second *punishment* for the same offense. <u>See</u> <u>Abney v. United States</u>, 431 U.S. at 66-61.[14] But prevention of multiple or successive trials for the same offense is "the only

---

[14]     The Military Commissions Act, 10 U.S.C. § 949h, and the Uniform Code of Military Justice, 10 U.S.C. § 844, protect a person from being "tried . . . a second time for the same offense." Mr. al-Baluchi argues that, in fact, these statutes also impliedly prohibit double punishment. The question is immaterial because, as described, double punishment of the nature alleged would not confer the requested relief.

objective of the double jeopardy clause that cannot be adequately protected by appeal from (or collateral attack on) a judgment of conviction in the second prosecution." United States ex rel. Stevens v. Circuit Court of Milwaukee County, 675 F.2d 946, 947-48 (7th Cir. 1982). Mr. al-Baluchi's arguments fail because he does not claim that his military commission is a second trial on the charged offenses, nor could he. He alleges only that, because he has already been tortured, a sentence of death (and its anticipation) would be a second punishment. Mr. al-Baluchi can present claims of that nature to his military commission (or on appeal).[15]

### c. The "Status" Exception

Mr. al-Baluchi also marshals cruel and unusual punishment arguments in service of his attempt to claim the "status exception" to Councilman abstention. Under this theory, abstention "is not appropriate in cases in which individuals raise substantial arguments denying the right of the military to try them at all, and in which the legal challenge turns on the status of the persons as to whom the military asserted its power." Hamdan v. Rumsfeld, 548 U.S. at 585, n. 16. See also Khadr v. Bush, 587 F. Supp. 2d 225, 234 (D.D.C. 2008) (recognizing the status exception to the "normal practice" of abstention) (quoting Councilman v. Schlesinger, 420 U.S. at 759). An individual may merit the status exception when "there is a substantial question whether a military tribunal has personal jurisdiction over the defendant" at all. Hamdan v. Rumsfeld, 548 U.S. at 585, n. 16.

Although "the precise contours of this status exception are unclear . . . the Supreme Court has offered two examples of challenges that come within its scope." In re Al-

---

[15]     As with Mr. al-Baluchi's arguments concerning cruel and unusual punishment, see supra n. 13, the Court need not decide whether Mr. al-Baluchi can claim this constitutional right to avoid double jeopardy because the Court otherwise concludes that it would not justify an exception to abstention under these circumstances.

Nashiri, 835 F.3d at 133.  Neither example supports Mr. al-Baluchi's claim to the status exception.

The first example in which the status exception could apply is "when the military attempts to court-martial a defendant who is undisputedly a civilian."  In re al Nashiri, 835 F.3d at 133.  This exception emerges from a pre-Councilman line of cases in which "habeas petitioners were *civilians* who contended that Congress had no constitutional power to subject them to the jurisdiction of courts-martial."  Schlesinger v. Councilman, 420 U.S. at 759 (discussing United States ex rel Toth v. Quarles, 350 U.S. 11 (1955); Reid v. Covert, 354 U.S. 1 (1957)) (emphasis added).  In such cases, the "disruption to petitioners' civilian lives and the accompanying deprivation of liberty" made abstention "especially unfair," as did the military courts' lack of expertise in the constitutional claims of the habeas petitioners.  Schlesinger v. Councilman, 420 U.S. at 759; see also Noyd v. Bond, 395 U.S. 683, 696 n. 8 (1969); Khadr v. Bush, 587 F. Supp. 2d at 233.

Mr. al-Baluchi posits only an attenuated basis for claiming this type of status exception: that he bears "the status of a victim of torture at the hands of the United States government."  Mot. Hr'g Tr. at 6.  This is an inventive but inapposite characterization.  In the context in which courts have recognized this status exception, "status" refers to whether one is within the class of persons that Congress specifically set aside for trial by a non-Article III tribunal.  See Khadr v. Bush, 587 F. Supp. 2d at 232 (noting that the exception has only been recognized for defendants in courts martials who claimed to be civilians).  For courts martial, that status is being a member of the military.  For military commissions, that status is being an

alien unprivileged enemy belligerent.  See 10 U.S.C. §948c.[16]  Whether a defendant is a civilian

or a member of the military is a legal inquiry directly imposed by statute.  Conversely, whether

or not a belligerent has been tortured is independent of the statutory classification that makes

certain defendants eligible for a military commission.  An exception to abstention is not

warranted in such circumstances.  See Khadr v. Bush, 587 F. Supp. 2d at 234 (declining to

extend the status exception to a Guantanamo Bay detainee who claimed that his military

commission lacked jurisdiction because of the detainee's status as a juvenile at the time of his

capture).

   Finally, interpreting this kind of status exception to include Mr. al-Baluchi does

not advance the aims that originally justified the recognition of the status exception.  In this case,

Mr. al-Baluchi will remain detained even if this Court grants his petition for habeas corpus.  See

Mot. Hr'g Tr. at 30-31, 36-37.  Hence, the "deprivation of liberty" posed by the Court's decision

to abstain in this case has a character different from the injury faced by citizen civilians taken

before military courts, who were not independently likely to have been detained by the military

upon successful habeas petition.  Cf. Noyd v. Bond, 395 U.S. at 696 n. 8.

   The second recognized example of a challenge that comes within the status

exception arises from the Hamdan petitioner's claim that his military commission was not

"regularly constituted" under the Geneva Conventions.  "An irregularly constituted court is *ultra*

*vires* and therefore necessarily lacks personal jurisdiction over any defendant."  In re Al-Nashiri,

835 F.3d at 133-34 (quoting Hamdan v. Rumsfeld, 548 U.S. at 589 n. 20) (internal quotations

omitted).  As Mr. al-Baluchi has conceded, the passage of the Military Commissions Act by

---

[16]  Mr. al-Baluchi does not challenge his status as an alien unprivileged enemy
belligerent for purposes of these proceedings.  See Mot. Hr'g. Tr. at 35.

Congress in 2006 neutralized the Hamdan petitioner's particular status exception argument by bringing military commissions into compliance with obligations imposed by the Geneva Conventions. See Mot. Hr'g Tr. at 23.

Mr. al-Baluchi argues by analogy, however, that he qualifies for the status exception to abstention because his military commission's ability to impose a sentence of death renders the commission *ultra vires* in violation of the MCA's prohibition on cruel and unusual punishment.[17] But in In re Al-Nashiri, the court of appeals clarified that the *ultra vires* status exception is simply an application of the status exception recognized in Reid and Quarles (for cases where the legal status of the defendant lies outside the jurisdiction of the court martial). As explained earlier, Mr. al-Baluchi cannot claim that kind of status exception. What Mr. al-Baluchi proposes is, in fact, a new application of the status exception. But, as he himself acknowledges, courts have not yet recognized a status exception that extends beyond the two specific examples in the Hamdan dicta. See Mot. Hr'g Tr. at 24.

To extend the scope of the status exception in the manner urged by Mr. al-Baluchi would be at odds with the general principles that govern Councilman abstention because his arguments do not amount to a right to avoid trial. Mr. al-Baluchi cites McLaughry v. Deming, 186 U.S. 49 (1902), for the proposition that a military commission, like a court martial, lacks jurisdiction when it is incompetent or constituted in "direct and plain violation of the act of Congress." See id. at 63. Mr. al-Baluchi would like the Court to intervene now, before trial, because any hearings before such a commission – one that he believes to be *ultra vires* – are the

_____

[17]      In addition to the basis for an exception to Councilman abstention, this purported *ultra vires* defect is also Mr. al-Baluchi's primary affirmative argument for an injunction. He believes that the defect is jurisdictional, rendering his commission void *ab initio*.

very injuries he seeks to avoid. First, however, Mr. al-Baluchi has not established the premise on which this argument depends: a colorable claim that executing him (or continuing to detain him) would actually violate the statutory and constitutional prohibitions against cruel and unusual punishment or double jeopardy. See Part III.A.2.a-b, supra. Second, Mr. al-Baluchi's "status" as a torture victim implicates his "particular vulnerabilities to a trial by military commission" rather than "the competence of the military commission itself," as generally required for an exception to Councilman abstention. In re al Nashiri, 935 F.3d at 34. As a result, the Court will not extend the status exception to Mr. al-Baluchi's claims. There is no "substantial question [of] whether [the] military tribunal has personal jurisdiction over the defendant," or whether the commission can hear his claims fairly. See id. at 133.

### d. Outrageous Conduct

While it is not a recognized exception to Councilman abstention, Mr. al-Baluchi also asks the Court – as a matter of "conscience and justice" – to dismiss the military commission charges against him as a remedy for the government's "outrageous conduct" during his pre-Guantanamo detention, a period during which the government allegedly tortured him. Mr. al-Baluchi does not establish, however, that the military commission itself is incapable of fully and fairly adjudicating this claim. And Mr. al-Baluchi's theory of outrageous conduct – that it requires pretrial dismissal of charges – has attained little support. In United States v. Padilla, 2007 WL 1079090 (S.D. Fla. 2007), for example, the district court declined to recognize outrageous conduct claims that, like the conduct alleged by Mr. al-Baluchi, concerned defendant's treatment in military custody after commission of the crime. Id. at *3 n. 6. While the Supreme Court has acknowledged that it "may someday be presented" with law enforcement conduct that is "so outrageous that due process principles would absolutely bar . . . [invocation

of] the judicial process" at all, see Russell v. United States, 411 U.S. 423, 431 (1973), the Court has never actually accepted this defense as grounds for dismissing an indictment before conviction. And as Mr. al-Baluchi conceded at the motions hearing, there is not "any United States case law that [deals] with anything remotely similar to the type of treatment that we're dealing with here." Mot. Hr'g Tr. at 13.[18]

Some courts have considered dismissal of convictions for outrageous conduct, but generally have done so only in cases of entrapment. See United States v. Boone, 437 F.3d 829, 842 (8th Cir. 2006) ("the rule that outrageous government conduct can foreclose criminal charges has been applied by our court almost exclusively to situations involving entrapment, where law enforcement officers have sought to create crimes in order to lure a defendant into illegal activity that she was not otherwise ready and willing to commit") (internal quotations omitted); United States v. Bogart, 783 F.2d 1428, 1435 (9th Cir. 1986), vacated in part on other grounds on rehearing sub nom. United States v. Wingender, 790 F.2d 802 (9th Cir. 1986) ("[A] successful due process defense must be predicated on intolerable government conduct which goes beyond that necessary to sustain an entrapment defense.") (citing United States v. Jannotti, 673 F.2d 578, 607-08 (3d Cir. 1982) (en banc)). But Mr. al-Baluchi has not argued that the government entrapped him into engaging in conduct to which he was not otherwise predisposed.

---

[18]     United States v. Toscanino, 500 F.2d 267 (2d Cir. 1974) is not to the contrary. The court in Toscanino acknowledged the possibility that the conduct of law enforcement in the process of bringing a defendant to the United States could be so outrageous that due process would require dismissal of the charges. Id. at 274-76. But no court has dismissed an indictment before a trial on this authority. Generally, "the manner by which a defendant is brought to trial does not affect the government's ability to try him." United States v. Umeh, 527 Fed. App'x 57, 64 (2d Cir. 2013).

Whatever viability the outrageous conduct remedy retains in theory, Mr. al-Baluchi must address his outrageous conduct allegations to the military commission in the first instance. The allegations do not compel this Court to recognize a new exception to Councilman abstention.

e. Suspension Clause

Finally, Mr. al-Baluchi argues that, even if his circumstances do not qualify for an exception to abstention, denying him recourse to this Court would nevertheless violate the Suspension Clause. See U.S. Const. art. I, § 9 ("The privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."). But abstention under these circumstances does not suspend the writ: it is axiomatic that petitioners must generally exhaust other judicial remedies before applying for federal habeas relief. "[T]he Supreme Court has explained in the court-martial context that 'a deferment of resort to the writ until other corrective procedures are shown to be futile' is 'in no sense a suspension of the writ of habeas corpus.'" In re Al-Nashiri, 835 F.3d at 130 (quoting Gusik v. Schilder, 340 U.S. 128, 132, (1950)). Mr. al-Baluchi alleges that abstention would deprive him of a meaningful opportunity to present his habeas claims. His arguments on this score ring hollow as long as Mr. al-Baluchi has the opportunity to present his claims to his military commission. Like his other positions, Mr. al-Baluchi's Suspension Clause argument depends on the claim that he cannot be made to litigate his claims before a military commission that is *ultra vires*. For the reasons described above, the Court does not accept the premise on which that argument relies.

*B. Mandamus Relief is Unavailable*

As an alternative to his habeas claim, Mr. al-Baluchi asks the Court to exercise its mandamus jurisdiction to halt the military commission. Mot. Hr'g Tr. at 28-30.[19] The relevant mandamus statute authorizes the Court to hear "any action in the nature of mandamus to compel an officer or employee of the United States or agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. But mandamus is a "drastic remedy," available only when petitioner has a clear right to relief, respondents have a clear duty to act, and there is no other adequate remedy available. Thomas v. Holder, 750 F.3d 899, 903 (D.C. Cir. 2014); see also Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 289 (1988) (noting that the "party seeking mandamus has the burden of showing that its right to issuance of the writ is 'clear and indisputable'"). See also In re Al-Nashiri, 835 F.3d at 136 (indicating in the context of the All Writs Act, 28 U.S.C. §1651(a), that mandamus is appropriate only if (1) there is no other adequate means to obtain relief; (2) the right to issuance of the writ is "clear and indisputable"; and (3) the writ is "appropriate under the circumstances").

However else Mr. al-Baluchi's arguments may be characterized, they do not establish a "clear and indisputable" right to relief, as the foregoing discussion and the parties' briefs amply illustrate. Nor has Mr. al-Baluchi shown that he has no other adequate remedy available. He concedes that he has not raised the claims he makes to this Court before the military commission. See Mot. Hr'g Tr. at 25-26. Yet, "[t]he MCA explicitly empowers

---

[19]     Because the Court concludes that mandamus is inappropriate in any event, it need not resolve respondents' claim that 10 U.S.C. § 950g confines mandamus jurisdiction of Mr. al-Baluchi's claim to the D.C. Circuit alone. See Part III.C, infra.

military commissions to make findings sufficient to determine their own jurisdiction."  In re Al-Nashiri, 835 F.3d at 125 (citing 10 U.S.C. § 948d).

## C.  The Court Need Not Resolve Other Jurisdictional Disputes

Aside from whether the Court should exercise jurisdiction, the parties disagree about whether the Court possesses subject matter jurisdiction at all.  Specifically, the parties disagree about whether Mr. al-Baluchi's petition advances habeas claims (over which the court has jurisdiction) or whether it is an "other action" (over which it has no jurisdiction).  See 28 U.S.C.  2241(e).  In addition, respondents urge the Court to adopt a broad reading of 10 U.S.C. § 950g, which gives the D.C. Circuit exclusive jurisdiction to determine the validity of *final* military commissions judgments – thus, they say, effectively reserving for the D.C. Circuit jurisdiction over *any* matters that might pertain to future appeals, including Mr. al-Baluchi's petition to this Court.  In view of the Court's other determinations, however, there is no need for this Court to resolve the disputes concerning 28 U.S.C. § 2241(e) and 10 U.S.C. § 950g.  Because the Court has decided to abstain from resolving the substance of the claims in Mr. al-Baluchi's habeas petition and that the exercise of mandamus jurisdiction is not appropriate, it need not determine whether Section 2241(e) or Section 950g precludes subject matter jurisdiction over Mr. al-Baluchi's claims.  See In re Al-Nashiri, 835 F.3d at 117 ("Because the motion was properly denied on [Councilman abstention] grounds, we need not consider the district court's subject matter jurisdiction any further.").

*D.  The Abstention Decision Resolves Both of the Instant Motions*

1.  Respondents' Cross Motion to Stay Habeas Proceedings

Because the Court has concluded that it must abstain from considering Mr. al-Baluchi's claims for equitable relief until the military commission concludes its proceedings, respondents' cross motion to stay proceedings in this Court will be granted.  Since the Court will abstain from resolving the merits of Mr. al-Baluchi's claims, it is appropriate to stay all proceedings relating to those claims.  A stay will conserve limited judicial resources until such time as the merits may be decided and, importantly, will avoid interference with the military commission, a primary aim of <u>Councilman</u> abstention.[20]

This stay is neither universal nor irrevocable.  It applies to claims that have been, will be, or could be adjudicated at the military commission or on appeal therefrom.  <u>See</u> <u>Khadr v. Bush</u>, 587 F. Supp. 2d at 230.  The stay imposed today is justified by the motions now before the Court.  It will not prevent this Court from exercising its jurisdiction over a subsequent habeas petition that merits an exception to abstention: for example, one that raises a claim that cannot be raised before the military commission.  Should there be a good faith basis for Mr. al-Baluchi to advance such a claim at a later date, he may file a motion to lift the stay.

---

[20]     To wit, factual findings from this Court could produce rulings on the key questions that are inconsistent with rulings on those questions from the military commission.  For example, the commission will decide whether Mr. al-Baluchi is guilty of a variety of crimes related to supporting terrorist attacks, while the habeas petition before this Court alleges that petitioner is "[innocent] of all wrongdoing."  Habeas Petition at 1. And respondents' evidence in the habeas proceeding appears to be materially similar to the government's evidence in the military commission.  Civil courts should avoid "[churning] over the same evidentiary material" that is at issue in a parallel criminal matter.  <u>See</u> <u>Brown v. U.S. Dep't of Justice</u>, 715 F.3d 662, 668 (D.C. Cir. 1983). The habeas proceedings and the military commission have been proceeding in parallel for years, but the likelihood of conflicting rulings – and the magnitude of the resulting interference – is substantially greater as the military commission draws closer to trial.

2.  Mr. al-Baluchi's Motion for a Permanent Injunction

Because the Court will abstain from adjudicating Mr. al-Baluchi's claims before the conclusion of the military commission proceedings, the Court denies as moot Mr. al-Baluchi's petition to permanently enjoin that military commission.  The court of appeals endorsed this approach to the materially similar cross motions in In re Al-Nashiri.  There, the court did not rule on the merits of petitioner's motion to enjoin his military commission trial because the district court correctly decided to abstain from resolving petitioner's habeas motion until completion of the military commission.  "It would be illogical for a federal court to preliminarily enjoin a parallel court proceeding when it will abstain from reviewing that proceeding altogether."  In re Al-Nashiri, 835 F.3d at 135.

IV.    CONCLUSION

For the foregoing reasons, respondents' cross motion [Docket No. 204] is granted and petitioner's motion [Docket No. 200] is denied.  The following motions are stayed pending further order of this Court:  Docket Nos. 125, 152, 155, 156, 157, and 160.  An Order giving effect to this Opinion shall issue this same day.

_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  July 29, 2019